```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
RAHUL SHAH on assignment of
EDWARD H.,                           1:17-cv-166 (NLH/JS)

        Plaintiff,                   OPINION

v.

HORIZON BLUE CROSS BLUE
SHIELD OF NEW JERSEY and BLUE
CROSS BLUE SHIELD OF
MINNESOTA,

        Defendants.
```

**APPEARANCES:**

MICHAEL J. SMIKUN
MICHAEL GOTTLIEB
LAW OFFICES OF SEAN R. CALLAGY, ESQ
650 FROM ROAD
SUITE 565
PARAMUS, NJ 07652
    On behalf of Plaintiff

MICHAEL E. HOLZAPFEL
BECKER LLC
354 EISENHOWER PARKWAY
SUITE 1500
LIVINGSTON, NJ 07039
    On behalf of Defendant

**HILLMAN**, District Judge

   This is one of many ERISA suits filed by Plaintiff Dr. Rahul Shah, as purported assignee of his individual patients, against his patients' various insurance companies. As in those

other suits, Plaintiff asserts in this matter that the insurance company wrongfully denied a request for payment of benefits under his patient's health insurance policy, and consequently, Plaintiff's bills for service were not paid, or not fully paid.

Before the Court is Defendant's Motion for Summary Judgment. For the reasons that follow, Defendant's motion will be granted.

## I.

The Court takes its facts from Defendant's Statement of Undisputed Material Facts and Plaintiff's Response. On April 27, 2015, Plaintiff performed surgery on Edward H. ("Patient"), during which he fused some of Patient's cervical vertebrae. At the time of his surgery, Patient had health coverage through a self-funded health benefits plan sponsored and administered by an employer ("the Plan"). The Plan is an ERISA benefit plan. Defendant Blue Cross Blue Shield of Minnesota is the Claims Administrator for the Plan. Under the Plan, a person must be an eligible employee, retiree, or an eligible dependent of the employee to be entitled to receive Plan benefits.

Plaintiff is an out-of-network, nonparticipating provider. Out-of-network, nonparticipating providers may submit claims on behalf of the claimant. The Plan language explains that the allowed amount for out-of-network providers is usually less than the allowed amount for in-network providers. The Plan also

explains that use of an out-of-network provider can result in significantly higher out-of-pocket expenses.

In addition, the Plan sets forth the following anti-assignment clause:

> A claimant may not assign his or her benefits to an Out-of-Network Nonparticipating Provider, except when parents are divorced. In the case of divorce, the custodial parent may request, in writing, that the Plan pay an Out-of-Network Nonparticipating Provider for covered services for a child. When the Plan pays the provider at the request of the custodial parent, the Plan has satisfied its payment obligation.

It further provides:

> If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court . . . ; <u>however, you may not assign, convey, or in any way transfer your right to bring a lawsuit to anyone else.</u>

It also provides that "[a] claimant may not assign to any other person or entity his or her right to legally challenge any decision, action or inaction of the Claims Administrator." It further states:

> The Plan benefits described in this Summary Plan Description are intended solely for the benefit of you and your covered dependents. No person who is not a Plan participant or dependent of a Plan participant may bring a legal or equitable claim or cause of action pursuant to this Summary Plan Description as a third party beneficiary or assignee hereof.

Plaintiff submitted $255,695 in charges for his services for reimbursement. Defendant then reimbursed the Patient for the amount covered by the Plan on May 8, 2015 through three

3

checks to the Plan subscriber.  The subscriber then endorsed the checks to "Premier Orthopaedic Associates."  Plaintiff pleads he is still due $239,680.12.

Plaintiff filed a Complaint in state court on November 23, 2016, bringing four claims: (1) breach of contract, (2) failure to make all payments pursuant to 29 U.S.C. § 1132(a)(1)(B); (3) breach of fiduciary duty; and (4) failure to maintain reasonable claims procedures under 29 C.F.R. 2560.503-1.  Defendants removed the Complaint to this Court on January 10, 2017.  Defendants thereafter filed a February 17, 2017 Motion to Dismiss.[1]  In this Court's September 27, 2017 Opinion, the Court granted Defendant's Motion to Dismiss in part and denied it in part.  The Court noted that the breach of contract claim had been voluntarily dismissed.  The Court further dismissed Plaintiff's claim under 29 C.F.R. 2560.503-1 as lacking a private right of action.  Plaintiff's remaining two claims were permitted to proceed.  Defendant filed a Motion for Summary Judgment on November 30, 2017.

**II.**

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]   Defendant Horizon Blue Cross Blue Shield of New Jersey was dismissed from this action by stipulation on March 8, 2017.

**III.**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at

322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

**IV.**

Defendant argues four bases for dismissal: (1) Plaintiff lacks standing because of the anti-assignment clause, (2) Plaintiff failed to exhaust administrative remedies, (3) Defendant's decision was not arbitrary and capricious, and (4) Plaintiff's breach of fiduciary claim is duplicative. The Court begins with standing.

Plaintiff makes a familiar argument that anti-assignment clauses cannot be used in health insurance plans to deny the healthcare provider standing in an ERISA action. The Court rejected this argument in its Opinion deciding Defendant's Motion to Dismiss. Plaintiff, however, notes the Court's acknowledgment that the Third Circuit had not addressed this issue as of the date of the September 27, 2017 Opinion and argues it is "plausible that the Third Circuit's impending decision [in American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield] will implicate the within matter."

The Third Circuit has since issued its decision in that matter. In May 2018, the Third Circuit concluded that "anti-

assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield, 890 F.3d 445, 453 (3d Cir. 2018). Courts in the District have held that this is true even when enforced against a healthcare provider. Id.; see also Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J., No. 16-8253, 2017 WL 3610486, at *2 n.3 (D.N.J. Aug. 22, 2017) ("[A]n anti-assignment clause can be enforced against the provider of the services that the Plan is maintained to furnish."); Univ. Spine Ctr. v. Aetna Inc., No. 17-8160, 2018 WL 1409796, at *5 n.6 (D.N.J. Mar. 20, 2018). Accordingly, the Court stands by its original determination, now with the support of the Third Circuit's May 2018 ruling.

Plaintiff also argues that, even with a valid anti-assignment clause, the anti-assignment clause has been waived. Plaintiff argues "Defendant's consistent course of direct dealing with Plaintiff renders any purported anti-assignment clause entirely unenforceable." He argues this "course of direct dealing" consists of Defendant granting Plaintiff pre-approval of Patient's treatment, that Plaintiff treated Patient and submitted a medical bill accompanied by an assignment of benefits, that Defendant processed Plaintiff's claim, and that Defendant issued a statement of payment.

The Court disagrees that such conduct constituted a waiver.

"[I]t is now well-settled law in the District of New Jersey that the Plan did not waive the Anti-Assignment Clause by dealing directly with the Medical Provider in the claim review process, or by directly remitting payment to the Medical Provider." Emami v. Quinteles IMS, No. 17-3069, 2017 WL 4220329, at *3 (D.N.J. Sept. 21, 2017); accord Univ. Spine Ctr. v. Aetna, Inc., No. 17-8161, 2018 U.S. Dist. LEXIS 92578, at *13 (D.N.J. May 31, 2018) (finding that payment of part of the plaintiff's claim and engagement in the appeals process is "insufficient to establish waiver"); IGEA Brain & Spine, P.A. v. Blue Cross & Blue Shield of Minn., No. 16-5844, 2017 WL 1968387, at *3 (D.N.J. May 12, 2017) (finding that the plaintiff's preparing of a health insurance claim form demanding reimbursement for services and the plaintiff's engagement in the administrative appeals process with the defendant was "insufficient to constitute a waiver" and stating that "[s]imply engaging in a claim review process with Plaintiff does not demonstrate a 'clear and decisive act' to waive the Plan's anti-assignment provisions and confer upon Plaintiff standing").

Indeed, the Third Circuit's recent opinion, while considering a claim under Pennsylvania law, held the same in considering whether the insurer waived an anti-assignment provision by processing a claim form and issuing a check to the appellant. See Am. Orthopedic, 890 F.3d at 454 (citing case law

9

from the District of New Jersey and concluding that "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal do not demonstrate 'an evident purpose to surrender' an objection to a provider's standing in a federal lawsuit").

In its Motion to Dismiss Opinion, the Court determined that the Plan's anti-assignment provisions were clear and unambiguous and enforceable against healthcare providers. The Court finds the anti-assignment clause valid and that it was not waived. The Court will grant Defendant's Motion for Summary Judgment on this basis. The Court need not address Defendant's other arguments that Plaintiff failed to exhaust the Plan's administrative remedies or that Defendant's payment decision was not arbitrary and capricious.

The Court notes, however, that Plaintiff's claim for breach of fiduciary duty must be dismissed as Plaintiff seeks duplicative monetary damages. Plaintiff's Complaint outlines four bases for its breach of fiduciary duty claim:

1. Failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations;

2. Participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

3. Failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and

    4. Wrongfully withholding money belonging to Plaintiff.

Plaintiff asks for the following relief from his breach of fiduciary duty claim: (1) payment of $239,680.12; (2) payment of all benefits Patient would be entitled to; (3) compensatory damages; (4) attorneys' fees and costs; and (5) any other relief deemed just and equitable.

Plaintiff asserts his breach of fiduciary duty cause of action pursuant to 29 U.S.C. § 1332(a)(3), which "does not authorize a claim seeking money damages." Plastic Surgery Ctr., P.A. v. CIGNA Health & Life Ins. Co., No. 17-2055, 2018 WL 2441768, at *13 (D.N.J. May 31, 2018). Title 29, U.S.C. § 1332(a)(3) provides that

> [a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

While Plaintiff argues the Court should deny this motion because Plaintiff should be able to maintain an action for "other appropriate equitable relief," Plaintiff's argument appears to be more appropriate for a motion to dismiss than a summary judgment motion. Courts in this district have frequently declined to dismiss a breach of fiduciary duty claim for seeking only monetary relief, finding such a determination

would be premature at the motion to dismiss stage. See, e.g., Univ. Spine Ctr., 2017 WL 3610486, at *4 ("Courts in this district and elsewhere have held that because a plaintiff may plead in the alternative, dismissal of a breach of fiduciary duty claim as duplicative of a benefits claim is generally not appropriate on a motion to dismiss. At this early stage, the Court cannot state with certainty the precise nature of USC's injuries or the appropriateness of any particular remedy, and thus cannot determine whether its claim under Section 502(a)(3) is coterminous with its claim under Section 502(a)(1)(B)."); Lourdes Specialty Hosp. of S. N.J. v. Anthem Blue Cross Blue Shield, No. 16-7631, 2017 WL 3393807, at *4 (D.N.J. Aug. 7, 2017). Plaintiff has not demonstrated any appropriate equitable relief would be appropriate in the face of Defendant's properly supported motion for summary judgment. Accordingly, Defendant's motion will be granted on that claim as well.

Defendant's Motion for Summary Judgment will be granted. An appropriate Order will be entered.


Date: July 13, 2018        s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.